UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------x
                              :
SALVATORE J. LENTINI, on      :
behalf of himself and all     :
others similarly situated,    :
                              :
        Plaintiff,            :
                              :
v.                            : Civil No. 3:06CV00572(AWT)
                              :
FIDELITY NATIONAL TITLE       :
INSURANCE COMPANY OF          :
NEW YORK,                     :
                              :
        Defendant.            :
                              :
------------------------------x

## RULING ON MOTION TO DISMISS

Plaintiff Salvatore J. Lentini ("Lentini") brings this class action complaint on behalf of himself and others who, between 2000 and the present, paid premiums for the purchase of title insurance from defendant Fidelity National Title Insurance Company of New York ("Fidelity") in connection with refinance transactions, qualified for discounted refinance rates, and did not receive the discounted rates. The defendant moves to dismiss Counts I, II, and III. For the reasons set forth below, the defendant's motion is being granted in part and denied in part and the plaintiff is being given leave to amend the complaint.

### I.  Factual Allegations

The complaint sets forth four causes of action. In Count I, the plaintiff alleges a violation of the Connecticut Unfair Trade

Practices Act, Conn. Gen. Stat. § 42-110a, et seq. ("CUTPA"). The CUTPA claim is based on violation of §§ 38a-816(1)(a) and 38a-816(8) of the Connecticut Unfair Insurances Practices Act, Conn. Gen. Stat. § 38a-815, et seq. ("CUIPA"), violation of § 38a-419 of the Connecticut Title Insurance Act, Conn. Gen. Stat. § 38a-400, et seq. ("CTIA"), and also "unfair and deceptive acts." (Complaint, at ¶ 52). In Count II, the plaintiff alleges a fraudulent misrepresentation claim. In Count III, the plaintiff alleges a negligent misrepresentation claim. In Count IV, the plaintiff alleges that the defendant was unjustly enriched.

The plaintiff alleges that in August 2002, Fidelity filed a rate manual ("2002 Rate Manual") with the Connecticut Insurance Department which was effective for title insurance applications received between August 26, 2002 and February 8, 2006. The plaintiff alleges that the 2002 Rate Manual set forth both a "regular rate" and a "reduced rate" relating to refinance mortgages. The 2002 Rate Manual provided, at Section 5:

> Whenever mortgage insurance is applied for within ten years from the date of issuance of a policy by any licensed insurer in Connecticut and the premises to be insured are identical and there has been no change in the fee ownership, the Company may accept application, the charge for which insurance shall be 60 percent of the applicable scheduled rate up to the largest amount of existing insurance (fee policy or present balance of existing insured mortgage) plus the full applicable scheduled rate on any excess.

(Complaint, at Ex. A). In February 2006, Fidelity filed a rate

2

manual ("2006 Rate Manual") with the Connecticut Insurance Department which was effective for title insurance applications received subsequent to February 9, 2006. The 2006 Rate Manual also set forth both a "regular rate" and a "reduced rate" relating to refinance mortgages. Section 5 of the 2006 Rate Manual is identical to Section 5 in the 2002 Rate Manual.

The plaintiff alleges that on or about June 3, 2004, he refinanced the mortgage on a property at 57 Greenhouse Boulevard, West Hartford, Connecticut, and paid a title insurance premium to Fidelity. The plaintiff alleges that on or about June 3, 2004, Fidelity, through its agent, MultiState Title Co., LLC "(a) concealed from the Plaintiff that he qualified for and was entitled to receive the discounted refinance rate and (b) supplied false, misleading, inaccurate and incomplete information about the applicable rate for title insurance by charging the Plaintiff Six Hundred Fifty Dollars ($650.00) for title insurance. The Defendant's non-disclosures and false, misleading, inaccurate and incomplete statements were material to the Transaction." (Complaint, at ¶ 39).[1]

---

[1] It not clear from the complaint whether the plaintiff is alleging any affirmative false or misleading statements other than the charging of $650.00. In Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss (Doc. No. 41), the plaintiff also refers to a HUD-1A form, and argues that this form contained a misrepresentation. It appears that the plaintiff's argument is that the listing of the price of the title insurance on this form constituted a misrepresentation. There is no reference to this

3

Lentini alleges that he (and all class members) were eligible for the discounted rate because "the transactions involved a refinance loan made to the same borrower on the same property as a prior mortgage." (Complaint, at ¶ 40). The plaintiff further alleges that the fact that the transactions were refinance transactions was evidenced in the title and closing documents for the property, which should have provided notice to the defendant of the plaintiff's eligibility for the reduced rate. Lentini alleges that the defendant did not inform him that he was eligible for the reduced rate and that he was charged the higher rate. Lentini contends that the premium he paid was in excess of the statutorily mandated rate.

## II. Legal Standard

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). A complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). See also Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). "The function

---

form in the complaint.

4

of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Mytych v. May Dept. Store Co., 34 F. Supp. 2d 130, 131 (D. Conn. 1999), quoting Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." United States v. Yale New Haven Hosp., 727 F. Supp 784, 786 (D. Conn. 1990) (citing Scheuer, 416 U.S. at 232).

**III. Discussion**

    A.    Pleading Requirements

        1.    Failure to Allege Facts Demonstrating Rate Eligibility

The defendant argues that the case should be dismissed because the plaintiff did not allege sufficient facts to demonstrate his eligibility for the refinance rate.

The plaintiff points to Barnes v. First American Title Insurance Co. for the proposition that even where a plaintiff fails to allege "compliance with the prerequisites set forth in the rate manual for entitlement to the discount rate," the complaint need not be dismissed. No. 1:06CV574, 2006 WL 2265553, at *1 (N.D. Ohio, Aug. 8, 2006). There, the court explained that "[w]hether Plaintiffs provided the necessary background information or

5

documentation is a factual issue to be determined after discovery." Id. at *2. However, the Second Circuit has stated that "'[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss.'" Achtman v. Kirby, McInterney & Squire, LLP, 464 F.3d 328 (2d Cir. 2006) (citation omitted). Furthermore, "[a] plaintiff must allege . . . those facts necessary to a finding of liability." Amron v. Morgan Stanley Inv. Advisors Inc., 464 F.3d 338, 343 (2d Cir. 2006).

Section 5 of the 2002 Rate Manual sets forth the requirements for receiving the discounted refinance rate. The plaintiff alleges, "[d]efendant had the means to know and knew that the Plaintiff and Class members qualified for and were entitled to receive a discounted refinance rate in connection with their finance transactions". (Complaint, at ¶ 60). Lentini further states that he and the other class members were entitled to the discounted rate because "the transactions involved a refinance loan made to the same borrower on the same property as a prior mortgage." (Complaint, at ¶ 40). However, Lentini fails to allege either that the former policy was issued within the previous ten years of the date of the application for the policy at issue or that the former policy was issued by a licensed insurer in Connecticut. While Lentini has alleged that the property and the borrower were the same, he does not address whether there were any

6

changes in the fee ownership of the property in the intervening period. Because the plaintiff's eligibility is a prerequisite to a finding of liability on any of the claims at issue, each claim is being dismissed with leave to amend.

    2.    <u>Compliance with Rule 9(b) Pleading Requirements</u>

The defendant further argues that the plaintiff's fraud claims fail to comply with the heightened pleading requirements of Fed. R. Civ. P. 9(b).[2] While courts normally grant a motion to dismiss "only if it appears that the plaintiff can prove no set of facts upon which relief may be granted," Rule 9(b) requires that "the circumstances constituting fraud . . . be stated with

---

[2] "Since fraud is not a necessary element of a state CUTPA claim . . . a plaintiff does not need to meet the heightened pleading requirements of Fed. R. Civ. P. 9(b), when asserting a state CUTPA claim in federal court." <u>Garcia v. Crabtree Imports</u>, No. 3:05CV1324(WWE), 2006 WL 1646158, at *2 (D. Conn. June 14, 2006). However, to the extent that the claims in Count I rely on affirmative statements or omissions involving fraud or mistake, Rule 9(b) applies. Rule 9(b) applies to the fraudulent misrepresentation claim in Count II. See <u>Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.</u>, 404 F.3d 566, 569 (2d Cir. 2005) (dismissing under Fed. R. Civ. P. 9(b), with leave to amend, the plaintiff's negligent misrepresentation claims); <u>Henneberry v. Sumitomo Corp. of America</u>, 415 F.Supp.2d 423, 454 (S.D.N.Y. 2006) ("[a]llegations in support of either a negligent misrepresentation or fraudulent misrepresentation claim must be pleaded with particularity"). However, courts in this district have concluded that Rule 9(b) does not apply to claims of negligent misrepresentation under Connecticut law. See <u>IM Partners v. Debit Direct Ltd.</u>, 394 F.Supp.2d 503, 521 n. 12 (D. Conn. 2005) (relying on difference in intent requirement under New York and Connecticut law); <u>DeNuzzo v. Yale New Haven Hosp.</u>, 465 F.Supp.2d 148, 154 n. 2 (D. Conn. 2006). Accordingly, Rule 9(b) does not apply to the negligent misrepresentation claim in Count III.

7

particularity." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1127 (2d Cir. 1994). Where allegations of fraud are made, they must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. Id. at 1128. "Malice, intent, knowledge, and other condition of mind of a person may be averred generally," but plaintiffs must "allege facts that give rise to a strong inference of a fraudulent intent." Id. at 1128. A plaintiff can establish the "strong inference" of fraud "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Id.

In paragraph 59 of the complaint, the plaintiff alleges that the conduct in question occurred on or about June 3, 2004 and identified the location of the conduct. The plaintiff also alleges that the defendant's agent engaged in the conduct at issue and that this conduct resulted in the plaintiff being charged the higher premium rather than the discounted refinance rate, although the plaintiff did not specifically identify the individual speaker. The defendant is put on notice that the plaintiff was charged the regular rate rather than the discounted refinance rate and that the agent failed to inform him of his eligibility for the discounted rate. The plaintiff has met his burden with respect to the

8

affirmative misrepresentations, i.e. representing to the plaintiff the price of the policy by charging the $650.00 fee. However, the plaintiff has failed to plead facts showing that the defendant had a duty to disclose his eligibility for the discounted rate. See Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd., 85 F.Supp.2d 282, 296 (S.D.N.Y. 2000) ("[i]n case of fraud resting on an alleged omission, plaintiff must allege facts giving rise to a duty to disclose" and "[a]lthough the existence of a duty to disclose is ultimately a matter of substantive law, plaintiff's [complaint] fails Rule 9(b) analysis here as well"). Accordingly, the defendant's motion is being denied with respect to the affirmative statements and granted with respect to the omissions alleged in Count I insofar as the claims rely on fraudulent or mistaken omissions and with respect to the omissions in Count II.[3] Although the plaintiff has failed to comply with Rule 9(b) with respect to the omissions, he is being given leave to amend the complaint.

---

[3] The court notes that even though Rule 9(b) does not apply to the negligent misrepresentation claim, the plaintiff must plead a duty to disclose to the extent he is proceeding on a nondisclosure theory. See De La Concha of Hartford, Inc. v. Aetna Life Ins. Co., No. CV980580129, 2002 WL 31170495, at *8 (Conn. Super. Ct. Aug. 23, 2002) ("plaintiff has failed to prove its cause of action of negligent misrepresentation because it has failed to establish that Aetna has a duty to disclose information it allegedly withheld from plaintiff").

### 3. Failure to Allege Elements of CUIPA Claim

The defendant argues that the plaintiff has not sufficiently pled a claim under Conn. Gen. Stat. §§ 38a-816(1)(a) or 38a-816(8). Under the plain language of section 816(1)(a), "any estimate, illustration, circular or statement, sales presentation, omission or comparison" can form the basis for a claim. While the defendant seems to suggest that an omission is insufficient under this section, the statutory language authorizes relief when an omission or statement "[m]isrepresents the benefits, advantages, conditions or terms of any insurance policy." Conn. Gen. Stat. § 38a-816(1)(a). The motion is being denied on this ground as the plaintiff has alleged an omission misrepresenting a term of the policy.

Section 816(8) requires "false or fraudulent statements or representations on or relative to an application for an insurance policy for the purpose of obtaining a fee, commission, money or other benefit from any insurer, producer or individual." Conn. Gen. Stat. § 38a-816(8). The plaintiff alleges that he "paid a premium for the purchase of title insurance from Defendant Fidelity." (Complaint, at ¶ 38). Drawing inferences in favor of the plaintiff, the court finds this allegation, in conjunction with allegations concerning the misrepresentations, sufficient to state a claim for misrepresentations made in connection with an insurance

10

application.[4]  Accordingly, the defendant's motion is being denied on this ground.

B.   Application of the Filed Rate Doctrine

The defendant argues that the filed rate doctrine conclusively establishes the plaintiff's knowledge of the applicable rates. According to the defendant, because reasonable reliance is an element of both fraudulent misrepresentation and negligent misrepresentation, a presumption that the plaintiff was aware of the rate precludes these claims.

The filed rate doctrine contains two strands: (1) the nondiscrimination strand and (2) the nonjusticiability strand.  See Black Radio Network, Inc. v. NYNEX Corp., 44 F.Supp. 2d 565, 574 (S.D.N.Y. 1999).  The nondiscrimination strand "prevent[s] carriers from engaging in price discrimination as between ratepayers" and the nonjusticiability strand is designed to maintain "the exclusive role of federal agencies in approving rates for telecommunications services that are 'reasonable' by keeping courts out of the rate-making process."  Marcus v. AT&T Corp., 138 F.3d 46, 58 (2d Cir. 1998).  "[T]he Supreme Court has long-held that the reasonableness of rates in a regulated industry is a question solely for the governing regulatory body."  Fax Telecomm. v. AT&T, 952 F.Supp.

---

[4] The plaintiff also points to the HUD-1A form in his opposition and states that this form was utilized in connection with his application for title insurance.  However, this allegation does not appear in his complaint.

11

946, 951 (S.D.N.Y. 1996). According to the Second Circuit, "the doctrine is applied strictly to prevent a plaintiff from bringing a cause of action even in the face of apparent inequities whenever either the nondiscrimination strand or the nonjusticiability strand underlying the doctrine is implicated by the cause of action the plaintiff seeks to pursue." Marcus, 138 F.3d at 59. The application of the filed rate doctrine is limited. "[T]he doctrine is to be applied strictly to prevent a plaintiff from bringing a cause of action whenever either purpose underlying the filed rate doctrine is implicated." Ice Cream Liquidation, Inc. v. Land O'Lakes, Inc., 253 F.Supp.2d 262, 275 (D. Conn. 2003).[5]

Neither party has cited authority on the question of whether the filed rate doctrine applies in Connecticut in the title insurance context. In Connecticut, the state has established a statutory framework to regulate title insurance rates. Title insurers file premium rate schedules with the Connecticut Commissioner of Insurance, who must approve the rates in order for them to take effect. See Conn. Gen. Stat. § 38a-419. Title insurers and title agents must make publicly available the schedules of effective premiums and charges. See id. at § 38a-420.

The plaintiff's claims do not implicate the nonjusticiability

---

[5] While the defendant argues that the filed rate doctrine precludes imposing a duty to disclose, the cases cited by the defendant involve situations where a purpose of the doctrine is implicated.

12

strand of the filed rate doctrine because agency decision-making regarding the applicable rates is not at issue. Under this strand, "even if a carrier intentionally misrepresents its rate and a customer relies on the misrepresentation, the carrier cannot be held to the promised rate if it conflicts with the published tariff." American Tel. and Tel. Co. v. Central Office Telephone, Inc., 524 U.S. 214, 222 (1998). While the plaintiff is not seeking a rate below the applicable filed rate, the defendant also argues that it cannot be required to disclose additional information to the plaintiff because "the terms of the filed tariffs 'conclusively and exclusively enumerate the rights and liabilities of the contracting parties,' [and] [plaintiff's] claim that the defendant carriers had obligations to him beyond those set out in the filed tariffs . . . is also barred by the filed-rate doctrine." Evanns v. AT&T Corp., 229 F.3d 837, 841 (9th Cir. 2000) (quoting Marcus, 138 F.3d at 56). However, Evanns and Marcus are distinguishable from the instant case. In Evanns, MCI and AT&T failed to inform customers that part of their telephone rates were USF assessments the FCC required service providers to pay and which MCI and AT&T passed on to their customers. Likewise, in Marcus, the carrier failed to inform customers of its practice of rounding upward to determine minutes used on long-distance service. The nonjusticiability strand was implicated in Marcus because relief could not be granted without undermining the FCC's approval of the

13

upward rounding. 138 F.3d at 61.[6] This case does not involve, as in Evanns and Marcus, a failure to disclose information concerning the components of the applicable rate. The plaintiff is not attempting to pay a lower rate than the filed rate; rather, Lentini is simply attempting to force the defendant to adhere to the approved rate.

In support of its nonjusticiability strand argument, the defendant also contends that the customer's knowledge of the filed rate is presumed. See, e.g., CMG Holdings, Inc. v. AT&T Corp., No. 992129E, 2000 WL 230356, at *7 (Mass. Super. Ct. Feb. 17, 2000) (misrepresentation claim failed because there could be no reasonable reliance on a false statement because "CMG is presumed to have had knowledge of the terms of the Tariff and thus may not assert that it justifiably relied on any fact that varies or contradicts the terms of the Tariff"). CMG Holdings is distinguishable, however, because the plaintiff does not allege that he relied on statements or omissions inconsistent with the published rate. See, e.g., Zanagara v. Travelers Indem. Co. of America, 423 F.Supp.2d 762, 776 (N.D. Ohio 2006) (subsequently overruled for lack of subject matter jurisdiction) (filed rate doctrine inapplicable to challenge to "allegedly deceptive sales

---

[6] However, the court also opined that, should a cause of action for fraud be established, injunctive relief (i.e. forcing AT&T to publicize its policy) was possible, as it would not implicate either strand of the filed rate doctrine. Id. at 61-63.

14

practice" based on failure to inform customers of lower-priced policies); Randleman v. Fidelity Nat. Title Ins. Co., 465 F.Supp.2d 812 (N.D. Ohio 2006) (filed rate doctrine inapplicable where challenge was based on Fidelity's charging a higher rate than discounted rate applicable to properties which had had title insurance within previous ten years); Ice Cream Liquidation, Inc., 253 F.Supp.2d at 276 ("[n]either of the underlying purposes of the filed rate doctrine are implicated" where the plaintiffs were challenging the "artificially inflated prices charged by defendants above [the minimums set by the USDA]"); Black Radio Network, 44 F.Supp.2d at 574 (filed rate doctrine did not apply "because the plaintiffs do not challenge, either directly or indirectly, the reasonableness of the rate contained in any filed tariff."). As in Zanagara and Randleman, the plaintiff is challenging allegedly deceptive sales practices, and is not seeking a rate inconsistent with the filed rate.

Furthermore, as the plaintiff argues in his opposition (Doc. No. 41, at 9), whether a defendant was under a duty to disclose eligibility for the lower rate to the consumer presents an issue of fact.[7] In Zanagara, the court found that the plaintiffs' allegation that homeowners' insurance agents owed a duty to

---

[7] While the plaintiff appears to be relying on the existence of such a duty, this allegation is not clearly stated in the complaint; as discussed above, the facts underlying the duty to disclose must be pled with particularity.

15

consumers was sufficient to survive a motion to dismiss based on failure to inform consumers of lower-priced policies. 423 F.Supp.2d at 765-66. "[I]n the context of issues of insurance coverage, '[b]ecause of the increasing complexity of the insurance industry and the specialized knowledge required to understand all of its intricacies, the relationship between an insurance agent and a client is often a fiduciary one. . . .[and] the question of whether an agent has a duty to advise an insured about the adequacy of coverage hinges upon whether a special relationship exists between the parties . . . The existence of such a relationship presents a question of fact . . ." Kenneth v. One Beacon Ins., 2005 WL 3047226, at *6 (Conn. Super. Ct. 2005) (citations omitted). The court notes that the plaintiff must allege with particularity the duty on which his claim is based because for a transaction to be fraudulent based on an omission, "there must be a failure to disclose known facts and, in addition thereto a request or an occasion or a circumstance which imposes a duty to speak." Duska v. City of Middletown, et al., 376 A.2d 1099, 1101 (Conn. 1977).

The nondiscrimination strand of the filed rate doctrine is also not implicated here, as the plaintiff is not seeking to obtain relief which would result in him paying a lower rate than other consumers. The court in Marcus found that monetary relief would implicate the nondiscrimination strand because successful plaintiffs would effectively pay lower rates than others. However,

in this case, as in Black Radio Network, the plaintiff does not "seek to benefit from a rate different from that provided by the tariff", but "contend[s] that defendant[] failed to comply with the terms of the tariff and [he] seek[s], in essence to enforce the filed tariff." 44 F.Supp.2d at 574. Accordingly, the plaintiff's claims are not barred by the filed rate doctrine.

### C. Standing for CUTPA Claim

The defendant argues that Lentini does not have standing to bring suit under CUTPA based on a violation of CUIPA because he is a third-party and not the insured. The plaintiff argues that he has standing because he paid the premium.

To have standing, a plaintiff must allege that he has "suffered an injury-in-fact that is fairly traceable to the challenged action of the defendant, and which is likely to be redressed by the requested relief." Jenkins v. U.S., 386 F.3d 415, 417 (2d Cir. 2004) (emphasis omitted). Conn. Gen. Stat. § 42-110b(a) provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." "Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of such a method, act or practice prohibited by section 42-100b" can bring a civil action. Conn. Gen. Stat. § 42-110g. An "ascertainable loss," is "'a deprivation, detriment, [or] injury that is capable of being discovered,

17

observed or established.'" Parker v. Shaker Real Estate, Inc., 47 Conn. App. 489, 496 (1998) (citation omitted). Also, where private causes of action are not provided under a particular statute, a CUTPA claim may still be brought. See, e.g., Eder Brothers, Inc., et al. v. Wine Merchants of Connecticut, Inc., 275 Conn. 363, 382 (2005) (even though the Liquor Control Act does not provide a private cause of action, a CUTPA claim might be brought based on "a violation of the regulatory principles embodied in and underlying that act").

The cases cited by the defendant involve situations where personal injury plaintiffs attempted to bring suit against the insurance company of the other party to the accident to enforce the policy. The plaintiffs cite to Sheltry v. Unum Life Ins. Co. of America, which, as the defendant points out, involves plaintiffs who should have been the insureds. 247 F.Supp.2d 169 (D. Conn. 2003). However, in Sheltry, the court also stated, "[w]e have found no authority for the proposition that a contractual relationship or privity is required for a party to maintain an action under CUTPA." Id. at 181. While neither party has cited a case presenting a situation analogous to the instant case, the plaintiff has alleged that he suffered an ascertainable loss, i.e. paid excess money, and the plaintiff alleges that the loss was a direct result of the defendant's actions. This is not a case where the plaintiff is a third-party with no direct dealings with the

18

insurer. Rather, the plaintiff personally contracted for the insurance and paid the premium as part of a refinance transaction. While the mortgagee is the insured party, it is the plaintiff who suffered the alleged injury. Therefore, the plaintiff has standing to bring this claim. The court notes that the plaintiff is also bringing a CUTPA claim based on a CTIA violation, which the defendant does not address.

> D. Requirement under CUTPA that Conduct be Deceptive or Unfair

The defendant argues that the presumption of knowledge precludes the misrepresentation claims, and that it therefore also insulates the defendant from a CUTPA claim based on the same alleged misrepresentations. Because the defendant's motion is being denied as to the first argument, its second argument also fails.

Second, the defendant, applying the "cigarette rule," argues that, as a matter of law, the alleged conduct is not unfair under CUTPA. For the CUTPA claim based on violations of CUIPA, the plaintiff points out that the "cigarette rule" is inapplicable because he is proceeding under the standard for a deceptive act or practice. See Caldor, Inc. v. Heslin, 215 Conn. 590, 597 (1990). The court concludes that the plaintiff has sufficiently alleged a claim under this standard. For the CUTPA claim based on "unfair and deceptive acts" (Complaint, at ¶ 52), the "cigarette rule"

19

applies only to the claim based on "unfair" conduct.  The court concludes that the plaintiff has, at minimum, adequately pled a claim for immoral or unethical conduct under this test.  Also, for the CUTPA claim based on a violation of the CTIA, the plaintiff argues that the claim is sufficiently pled under both the "cigarette rule" and the test for a deceptive act or practice under CUTPA.  The plaintiff has alleged a statutory violation and thus the court concludes that a sufficient factual basis has been alleged under either the "cigarette rule" or the <u>Caldor</u> standard.  Accordingly, the defendant's motion is being denied on this point.

**IV. Conclusion**

For the reasons set forth above, the Motion to Dismiss of Defendant Fidelity Title Insurance Company (Doc. No. 22) is hereby GRANTED in part and DENIED in part, and the plaintiff is given leave to amend the complaint.  The plaintiff shall file an amended complaint within 30 days.  Within 30 days of the filing of the amended complaint, the defendant shall file any motion to dismiss addressing issues not presented by the original complaint.

It is so ordered.

Dated this 23rd day of March 2007 at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge